# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DERIC A. BROWN, <br><br> Defendant. | Case No. 01-CR-196-JPS <br><br> **ORDER** |

On February 18, 2020, Defendant Deric A. Brown ("Brown") filed a *pro se* motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Docket #36). The U.S. Department of Probation filed a memorandum, and the government filed a response to Mr. Brown's motion. (Docket #38, #39). Brown submitted a reply. (Docket #43). The Federal Defender Service has declined to intervene in this case. (Docket #41).[1] The Court therefore considers the motion fully briefed. For the reasons explained below, Brown's motion will be granted and his sentence will be reduced from 624 months to one of 408 months.

## 1. RELEVANT FACTS

During a two-month period in 2001, Brown went on a drug-fueled crime spree that included robbing eight banks, carjacking two cars, and stealing a police squad car. He used a gun during the commission of some of these crimes. He pled guilty to seven bank robberies and two charges of brandishing a gun in furtherance of a crime of violence, in violation of 18

---

[1] Defendant also filed a motion to appoint counsel, (Docket #44), which will be denied as moot.

U.S.C. § 924(c). On October 17, 2002, this Court sentenced Brown to 240 months on each of the seven bank robbery counts, to run concurrently to each other, as well as 84 months on the first § 924(c) charge, to run consecutively to the 240 month term. Under the statutory scheme in effect at the time, the Court was obligated to sentence Brown to an additional 300-month term of imprisonment for the second § 924(c) offense, to run consecutively to all other terms of imprisonment. Thus, Brown's total term of imprisonment was 624 months.

In the years since Brown's incarceration, he appears to have made a complete 180-degree change in attitude and conduct. The Court will detail Brown's impressive—some might say extraordinary—accomplishments in Section 3.4, below. It suffices to say that Brown has seized every opportunity to rehabilitate himself, and the changes that he has made, particularly when measured against his prior conduct, are deeply admirable.

## 2. LEGAL BACKGROUND

Title 18 United States Code Section 924(c)(1)(C), which governs gun-related crimes, used to read: "*In the case of a second or subsequent conviction under this subsection*, the person shall be sentenced to a term of imprisonment of not less than 25 years. . ." (emphasis added). This was understood to mean that "there [wa]s no requirement of separate indictments or an interval of punishment" between § 924(c) offenses in order to trigger the so-called stacking provision. *United States v. Cardena*, 842 F.3d 959, 1000 (7th Cir. 2016); *Deal v. United States*, 508 U.S. 129, 131–34 (1993) (superseded by statute). Thus, a defendant who was convicted of two or more § 924(c) offenses in the same indictment would be sentenced to an additional 25 years in prison for the second or subsequent counts, with each

25-year sentence to run consecutively any other sentences imposed. *See e.g.*, *United States v. Redd*, Case No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *2 (E.D. Va. Mar. 16, 2020) (defendant convicted of three § 924(c) offenses; the second and third § 924(c) offense triggered the stacking provision).

In 2018, the Congress amended Section 924(c) to read, "*In the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final*, the person shall. . .be sentenced to a term of imprisonment of not less than 25 years. . ." 18 U.S.C. § 924(c)(1)(C) (emphasis added); First Step Act of 2018 § 403, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) ("First Step Act"). The First Step Act makes clear that the 25-year sentence enhancement only applies if the defendant had a previous, final § 924(c) conviction, and was later charged and convicted under a new indictment with an additional § 924(c) offense. *Id.* In other words, § 924(c)(1)(C) cannot be used to enhance the sentence of multiple 924(c) offenses charged under the same indictment. This provision of the First Step Act does not apply retroactively. *Id.* § 403(b).

In a separate provision, the First Step Act enabled district courts to consider a defendant's motion for compassionate release and reduce the sentence, if appropriate. Specifically, "the court,. . .upon motion of the defendant. . .may reduce the term of imprisonment. . .after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that. . .extraordinary and compelling reasons warrant such a reduction. . .and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); First Step Act § 603(b). Previously, district courts had only been permitted to order such a reduction on a motion from the Bureau of Prisons.

The First Step Act therefore implemented a dramatic, non-retroactive sentencing amendment and conferred power to district courts to reduce sentences under extraordinary and compelling circumstances on motions made by defendants. The logical outcome of these provisions is that courts have granted compassionate relief motions to certain individuals who would not have been subject to the 25-year stacking provision had they been sentenced today. *See Redd*, 2020 WL 1248493, at *5–6 (concluding that "extraordinary and compelling developments" such as these may warrant a sentence reduction); *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *7–9 (M.D. Tenn. Mar. 4, 2020) (finding that "the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reason for a sentence reduction. . .at least when considered in conjunction with" other reasons such as defendant's age and rehabilitation); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) (finding a reduction in sentence warranted due to the "radically different sentence" that defendant would have received under the new statute, as well as defendant's rehabilitation); *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *5–7 (D. Utah Feb. 18, 2020) (determining that defendant's "age, the length of sentence imposed, and the fact that he would not receive the same sentence if the crime occurred today all represent extraordinary and compelling grounds to reduce his sentence."); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) (finding that extraordinary and compelling reasons existed

due to "the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed.").[2]

Absent any guidance from the Seventh Circuit, and in light of the First Step Act's explicit purpose to "[i]ncreas[e] the use and transparency of compassionate release," this Court finds that it is not precluded from assessing whether this significant change in statute, alone or in combination with other factors, warrants a reduction in sentence under 3582(c)(1)(A). *See* First Step Act § 603(b) (subsection titled "Increasing the use and transparency of compassionate release."). The lack of retroactivity "simply establishes that a defendant sentenced before the [First Step Act] is not *automatically* entitled to resentencing; it does not mean that the court may not or should not consider the effect of a radically changed sentence for purposes of applying § 3582(c)(1)(A)." *O'Bryan*, 2020 WL 869475, at *1 (emphasis in original). Indeed, from a practical standpoint, "[i]t is not unreasonable for Congress to conclude that not *all* defendants convicted under § 924(c) should receive new sentences, even while expanding the

---

[2]There is some disagreement among district courts as to whether Congress's decision not to make the 924(c) amendment retroactive precludes a district court from finding, on an individual, case-by-case basis, that the sentence disparities resulting from the 924(c) amendment are compelling and extraordinary circumstances warranting a reduction in sentence. However, the tendency seems to be toward allowing consideration of the 924(c) amendment in compassionate release motions. *Compare United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *8, (S.D. Iowa April 29, 2020) (granting a motion for reconsideration and reducing a defendant's sentence pursuant to § 3582(c)(1) based, in part, on other courts granting such motions, noting that "although the Court cannot make § 403 of the First Step Act retroactive, it can still consider the resulting sentencing disparity as part of a motion for compassionate release.") *with United States v. Neubert*, No. 1:07-CR-00166-SEB-KPF, 2020 WL 1285624, at *3 (S.D. Ind. Mar. 17, 2020) (explaining that the 924(c) amendment and subsequent sentence disparity would not constitute extraordinary and compelling circumstances).

power of the courts to relieve *some* defendants of those sentences on a case-by-case basis." *Maumau*, 2020 WL 806121, at *7 (emphasis in original).

## 3. ANALYSIS

In evaluating a motion for compassionate release, the Court must consider

> (1) whether [Brown] has exhausted his administrative remedies; (2) if he has exhausted his administrative remedies, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; (3) if a warranted reduction exists, whether such a reduction is consistent with applicable policy statements of the Sentencing Commission; and (4) if so, what sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

*Redd*, 2020 WL 1248493, at *4; 18 U.S.C. § 3582(c)(1)(A).

### 3.1 Exhaustion

Courts may only consider motions for compassionate release brought by the defendant after either (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Put another way, if the warden denies the request, the denial ought to be appealed; however, if 30 days lapse without a response from the warden, then the motion will be properly before the district court—no appeal is necessary because no response was received.

Here, on November 29, 2019, Brown filed an inmate request to the warden of Federal Correctional Institution ("FCI") Greenville, asking the warden to file a motion for compassionate release on his behalf. (Docket #36 at 22). On February 7, 2020, when Brown drafted his motion for

compassionate release, there was no response from the warden. *Id.* at 15. More than 30 days lapsed without a response; therefore, the motion is properly before the Court. 18 U.S.C. § 3582(c)(1)(A). The government does not argue that the motion is not properly exhausted.

### 3.2 Extraordinary and Compelling Circumstances

There are a handful of provisions that guide courts in determining whether a sentence should be reduced for "extraordinary and compelling reasons," and none of them "define the universe of considerations." *Redd*, 2020 WL 1248493, at *4. First, § 3582(c)(1)(A) instructs courts to look to the policy statements issued by the Sentencing Commission; however, these have not been updated since the First Step Act was passed. *See* U.S.S.G. § 1B1.13 (most recently amended November 1, 2018); First Step Act § 603(b), 132 Stat. 5194 (Dec. 21, 2018). Additionally, portions of the relevant policy statement at issue here, U.S.S.C. § 1B1.13, are facially inapplicable to motions such as these. *See e.g. id.* § 1B1.13 cmt. n.1(D) (a catch all provision leaving discretion to reduce sentences exclusively within the purview of "the Director of the Bureau of Prisons.").

Because U.S.S.C. § 1B1.13 cmt. n.1(D) is outdated and inapplicable, courts have held that it does not preclude courts from exercising discretion when circumstances warrant relief. *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) (noting that because "the Commission's statutory authority is limited to explaining the appropriate use of sentence-modification provisions under the *current* statute. . .an amendment to the statute may cause some provisions of a policy statement to no longer fall under that authority[.]") (citing 28 U.S.C. § 994(a)(2)(C)); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) (explaining that the old policy statement is "inconsistent with the First Step Act, which

was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BOP finds they are not appropriate."); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681–82 (N.D. Cal. 2019) (following "the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant compassionate release.") (internal quotations omitted).

Section 3553(a)(5) is another potentially instructive provision, which explains that any "pertinent policy statement" should be considered "subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28)." Finally, there is 28 U.S.C. § 994(t), which sets forth the duties of the Sentencing Commission. Section 994(t) does not contain any specific guidance on criteria that should be considered when determining motions for compassionate release, except to note that "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."

In light of this authority, a majority of courts reading the sentencing guidelines in conjunction with the amended statute hold that the catch-all provision at U.S.S.G. § 1B1.13 cmt. n.1(D) should be read to enable district courts to make the same determinations that would normally be left to the Director of the Bureau of Prisons. *See e.g.*, *Redd*, 2020 WL 1248493, at *6–8, n.18 (citing cases); *O'Bryan*, 2020 WL 869475, at *2; *Maumau,* 2020 WL 806121, at *2–4; *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3–5 (S.D. Tex. June 17, 2019) (determining that U.S.S.G § 1B1.13 cmt.

n.1(D) does not bear on the court's analysis of Section 3582(c)(1)(A)). The upshot is that the lack of an applicable policy statement does not impede a Court's ability to make a determination as to whether a defendant has shown extraordinary or compelling circumstances.

Absent any specific guidance, the district court in *Redd* evaluated whether extraordinary and compelling reasons existed to reduce the sentence by considering (1) the sentence the defendant originally received compared to the one he would receive today; (2) the disparity between those sentences; and (3) the reason for that disparity. *Redd*, 2020 WL 1248493, at *5. The court determined that a disparity due to the 924(c) amendment was "the result of Congress' conclusion that sentences like [defendant's] are unfair and unnecessary." *Id.* at *6. The court did not consider any factors other than those involving the sentence disparity, and further noted that Congress has previously contemplated that such amendments might warrant relief. *See id.* at *5 n.8 (citing S. Rep. No. 98-225, 1983 WL 25404 (Leg. Hist.) at *55-56 (Aug. 4, 1983) ("The [Senate Judiciary] Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include. . .*some cases in which the sentencing guidelines for the offense of which the defend[ant] was convicted have been later amended to provide a shorter term of imprisonment.*") (emphasis added)). Similarly, in *Urkevich*, the court determined that the sheer "injustice of facing a term of incarceration forty years longer than Congress now deems warranted" was sufficient to establish extraordinary and compelling circumstances. 2019 WL 6037391, at *4.

If Brown had been sentenced today rather than in 2002, there is no question that he would have received 408 months' imprisonment, rather

Page 9 of 17
Case 2:01-cr-00196-JPS   Filed 08/07/20   Page 9 of 17   Document 45

than 624 months. This is an 18-year difference on a mandatory, consecutive term. Moreover, Brown's sentences for the predicate offenses may have been lower, resulting in a lower sentence overall. *Dean v. United States*, 137 S. Ct. 1170, 1176–77 (2017) (permitting sentencing courts to consider mandatory minimum sentences imposed under § 924(c) when determining the appropriate sentence for a predicate offense). This disparity is significant, as demonstrated not only by Congress's decision to amend the statute to clarify its intent, but also by the pure fact of it: 18 years is a long time to remain incarcerated; indeed, it is nearly as long as Brown has already been incarcerated. Finally, the reason for the disparity is simply that the original statute was interpreted a certain way—ultimately, in a way that led to "unfair and unnecessary" sentences. *Redd*, 2020 WL 1248493, at *6. There is no penological justification at play, here.

The Court also notes that, in addition to the dramatic sentencing disparity, Brown has shown himself to be a hardworking and diligent inmate capable of tremendous change. The Court will discuss Brown's personal characteristics great detail in Section 3.4, but it suffices to say that Brown's prison record—while certainly not the sole basis for granting relief—is nothing short of excellent. For these reasons, the Court concludes that Brown has established compelling and extraordinary circumstances.

### 3.3 Consistency with the Policy Decisions of the Sentencing Commission

As discussed briefly in Section 3.2, *supra*, in the absence of an applicable policy statement, a majority of district courts have determined that they have authority to determine whether extraordinary and compelling circumstances exist. *Redd*, 2020 WL 1248493, at *7, *Stinson v. United States*, 508 U.S. 36, 38 (1993) (holding that guideline commentary is

authoritative "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."); *Cantu*, 2019 WL 2498923, at *3–5 ("U.S.S.G. § 1B1.13 cmt. n.1(D) no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court."); *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (holding that, in light of the First Step Act, "federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction."). The First Step Act was enacted to encourage the increase of compassionate release motions, therefore, it would be "inconsistent with the First Step Act" to rely exclusively on the Sentencing Commission's outdated policies. *Beck*, 425 F. Supp. 3d at 579. Moreover, U.S.S.G. § 1B1.13 cmt. n.2 explains that "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement."

From these authorities, the Court draws two conclusions. First, the "catch-all" provision at U.S.S.G. § 1B1.13 cmt. n.1(D), which refers exclusively to the BOP, is not applicable to the First Step Act as amended, and does not preclude the Court from finding extraordinary and compelling circumstances outside of the examples set forth at U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). Second, the fact that it was foreseeable that Congress could amend the stacking provision does not render the dramatic amendment any less extraordinary or compelling. Accordingly, the Court's determination that Brown's sentence should be reduced on his motion for compassionate release due, in part, to the 924(c) amendment, is

not inconsistent with the policy statements set forth by the Sentencing Commission.

### 3.4 3553 Factors

Having determined that extraordinary and compelling reasons warrant a sentence reduction and these reasons are not inconsistent with the sentencing guidelines, the Court will now assess the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). These factors include the nature of the offense, the characteristics of the defendant, the need for the sentence imposed (in terms of reflecting the seriousness of the offense, as well as retributive, rehabilitative, deterrent, and protective reasons for the sentence), the applicable guideline sentence, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)–(6). Finally, Section 3553(a) requires sentencing courts to exercise prudence: the sentence must be "sufficient, but not greater than *necessary*" to meet these goals. *Id.* (emphasis added).

The government argues that the 3553 factors weigh against Brown, particularly due to his long criminal history, which began in 1975, at age 17, when he robbed a store at gunpoint and served six years' imprisonment. In the early 1980's, Brown was released to the crack epidemic surging through cities in the United States. He, too, began using the drug. In fact, his adulthood shows a life that was driven, and marred, by it: in 1987, he robbed a gas station; in 1997, he robbed a retail store; in 2000 he flunked out of the Choice Program, "a drug treatment program designed for hardcore, drug addicted criminals;" and in 2001 he committed the series of armed robberies for which he is currently serving a term of imprisonment—the result of a "crack cocaine fueled crime spree." (Docket #38 at 12–13). It is inarguable that Brown spent a 26-year chapter of his life embroiled in crime,

that he threatened violence to fuel his drug use, and that he was a danger to society. The nature of Brown's crimes are very serious.

But while these factors—the seriousness of the offense and the defendant's personal history—may weigh against Brown, others tip the balance in his favor. Nearly two decades later, Brown has demonstrated that he is capable of change. He turned his prison sentence into a growth opportunity, and is rehabilitating. In addition to this, Brown has demonstrated that he is no longer a threat to the public.

Brown has a stellar prison record. He has won the respect of his superiors and the correctional officers who have been tasked with monitoring him day in and day out for the last two decades. His application consists of five letters of recommendation from correctional officers and employees at FCI Greenville, his current facility. Lieutenant Walker, who supervised Brown while Brown served two-years as a Captain's Orderly, explained that Brown is "a very reliable and honest person determined to make amends for his wrong doing." (Docket #36-1 at 3). Lieutenant Walker also explained that Brown "was always punctual, respectful and dedicated to completing all tasks assigned to him." *Id.* G. Zykan, who has supervised Brown for the last six years in the Food Service Department, explained that Brown is an "asset" to the department and is an "an extremely hard worker and a model worker. . .He is also a quick learner and a self-motivator that always has a positive attitude that is almost contagious." *Id.* at 4. Lieutenant Phillips, who supervised Brown in The Captain Complex, explained that Brown was "a very hard worker and a model inmate worker for our department." *Id.* at 5. Dr. Patrick Sears confirmed that Brown has been a Suicide Watch Companion since August 24, 2018, and had completed 26 hours of training in "topics such as effective communication, active

Page 13 of 17
Case 2:01-cr-00196-JPS    Filed 08/07/20    Page 13 of 17    Document 45

listening, understanding mental health conditions, understanding addictive disorders, and other topics." *Id.* at 6. Finally, his counselor, K. Chambers, wrote that Brown took several re-entry classes, in which he was "a good contributor" and "appeared to be reliable and brought a positive attitude to the group." *Id.* at 7. His recommenders roundly considered him to be an excellent candidate for early release. *Id.* at 3–7.

In addition to proving himself to be a good worker and winning the respect of his superiors, Brown has attended to his education and personal development. Throughout his incarceration, he has contributed to his Financial Responsibility Plan. He has also taken several criminology education courses including "Cause and Solution of Recidivism" and "Criminal Thinking," as well as general education courses in psychology, anthropology, Western Civilization, African American history, personal finance, typing courses, book clubs, and aerobic wellness classes. *Id.* at 9.

Brown has also demonstrated a commitment to improving his mental health in order to ensure that he is well-equipped to re-enter society. He successfully participated in a pilot pre-release program called Life Connections Program ("LPC"), which focuses on "foster[ing] personal growth and responsibility" to help participants "take responsibility for their criminal behavior" and engage in pro-social conduct consistent with "normative values and responsibilities." *Id.* at 11. Over an 18-month period, Brown completed 431 hours' worth of courses in LCP, which were focused on cognitive, character, interpersonal, and career development. *Id.* at 12.

Over the years, he has successfully participated in many drug abuse treatment and psychology programs. *Id.* at 14–32. As early as 2007, upon completing the "Challenge" program, a treatment specialist noted that Brown was "an outstanding community member" who participated

actively and went above and beyond his programming requirements. *Id.* at 18. At that point, "the sum of the available clinical data suggest that Mr. Brown's willingness to adopt a drug-free/pro-social lifestyle is currently assessed to be significant." *Id.* It was recommended that additional psycho-educational and therapeutic programming be continued during and after his release. *Id.*

Brown's letter to the Court, which he wrote in support of his motion, demonstrates such thoughtful, considered, and pro-social behavior. He notes that although drugs and alcohol are still available in prison to those who seek them out, he has abstained. (Docket #36 at 19). He acknowledges the negative effects that drugs had on his life while taking full responsibility for his decisions, actions, and the effects that his crimes had on others. *Id.* He has maintained contact with his family, and has plans to return to them if he is released earlier. *Id.* at 24–25. His single, minor infraction on the record is that he was found smoking in an area that was not intended for smoking—not a violent or calculating offense by any standard. Indeed, in nearly two decades, he has not demonstrated any kind of violent or anti-social proclivity. In another context, his education and interests might suggest a well-rounded student, rather than a prisoner making the utmost of available programming. In short, Brown has shown himself to be a hardworking, thoughtful, and hopeful person.

Congress has made clear that rehabilitation alone is an insufficient basis for compassionate release. 28 U.S.C. § 994(t). But this is not simply a case of rehabilitation—although it is that, too. This is a case that calls upon the Court to reckon with the factors set forth in 3553(a), in order to ensure that Brown's sentence is "sufficient but no greater than necessary" to meet the goals of sentencing. If Brown had been sentenced today, he would be

Page 15 of 17
Case 2:01-cr-00196-JPS    Filed 08/07/20    Page 15 of 17    Document 45

serving a 34-year sentence, not a 52-year sentence—an eighteen-year difference in length. A 34-year sentence is no laughing matter, either; it serves the same retributive, deterrent, and protective purposes, as demonstrated by the fact that Congress has clarified that this is the sentence that should have been imposed in cases like this all along. *See* First Step Act § 403 (subsection titled "Clarification of Section 924(c) of Title 18, United States Code). Moreover, the disparity between Brown and individuals sentenced today for the exact same crime is significant. For a man like Brown, who was sentenced at age 44, it is the difference between a firm sentence and a life sentence.

Brown is 62 now. He will be 73 if he is released with good-time credit.[3] His advanced age combined with the thoroughly documented changes he has made in his character and his life—as well as the extensive programming he can expect to receive under supervised release—all but ensure that the public will be safe from any future drug-fueled armed robberies. Furthermore, Brown's submissions suggest that he will be a productive and contributing member of society—someone who will do better for the world outside of prison than in it.

## 4. CONCLUSION

For the reasons explained above, the Court determines that a sentence reduction is warranted. Brown's sentence for Count Nine will be reduced from 300 months to 84 months, to run consecutively to the remainder of his sentence, rendering his total sentence to be 408 months in length. An amended judgment will follow.

---

[3] Brown's federal sentence was imposed to run consecutively to his state court sentence in Milwaukee County Circuit Case Number 97CF2525.

Page 16 of 17
Case 2:01-cr-00196-JPS    Filed 08/07/20    Page 16 of 17    Document 45

Accordingly,

**IT IS ORDERED** that Defendant's motion to reduce sentence (Docket #36) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Defendant's motion to appoint counsel (Docket #44) be and the same is hereby **DENIED as moot**.

Dated at Milwaukee, Wisconsin, this 7th day of August, 2020.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Page 17 of 17
Case 2:01-cr-00196-JPS   Filed 08/07/20   Page 17 of 17   Document 45